Eastern District of Kentucky
FILED
JUL 13 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 04-353-GWU

MARIA G. CAMPBELL,                                                    PLAINTIFF,

VS:                         MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,            DEFENDANT,

## INTRODUCTION

Maria Campbell brought this action to obtain judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits. The case is before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes,

1

the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(I).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742

2

F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through the use of the medical-vocational guidelines.

3

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range

4

of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Campbell, a 49 year-old former teacher's aide with a high school education, suffered from impairments related to neck and low back pain secondary to degenerative disc disease, a history of irritable bowel syndrome, dysthymia, and anxiety. (Tr. 27-28). While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work. (Tr. 27-28). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 28). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 26).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Linda Sparrow

5

included an exertional limitation to light level work restricted from a full range by such non-exertional limitations as (1) an inability to ever climb ladders, ropes or scaffolds; (2) an inability to more than occasionally stoop, kneel, crouch or crawl; (3) an inability to more than occasionally lift overhead; (4) a need to avoid concentrated exposure to vibration; and (5) a "limited but not precluded" ability to deal with a general public, to deal with work stresses as well as to understand, remember and carry out complex instructions. (Tr. 705-706). In response, the witness identified a significant number of jobs in the national economy. (Tr. 706). Therefore, assuming that the vocational factors considered by Sparrow fairly characterized Campbell's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned can find no error. Dr. Thadis Cox, an examining consultant, found that the plaintiff did not suffer from any physical limitations. (Tr. 616-619). The administrative findings were certainly consistent with this opinion. Dr. Michael Best, another examiner, indicated that the claimant was capable of engaging in work activities and opined that she could return to her past work. (Tr. 512). The ALJ's findings are also compatible with this opinion. Dr. Timothy Kriss, also an examining source, noted that her physical and neurological examinations were both completely normal . (Tr. 525). This opinion also supports the administrative decision. The hypothetical question essentially included all of the physical restrictions identified by Dr. Lynnell Dupont (Tr. 170-178) and Dr. Timothy Gregg (Tr. 315-323), the non-examining medical reviewers. Such treating and examining sources as the staff at Appalachian Regional Healthcare (Tr. 130-151, 200-202, 487-495, 549-551), the staff at the Mountain Comprehensive Health Corporation (Tr. 152-162, 307-346), Dr. Peter Bales (Tr.

6

324-326), Dr. Garnett Sweeney (Tr. 500-502), the staff at Central Baptist Hospital (Tr. 546-548), Dr. Lisa DeGnore (Tr. 552-553), and Dr. David Bosomworth (Tr. 649-650) did not report the existence of more severe physical restrictions than those found by the ALJ. These reports provide substantial evidence to support the administrative decision.

Campbell argues that the ALJ erred in rejecting the opinion of Dr. John Gilbert, her treating neurosurgeon. Dr. Gilbert identified extremely severe physical restrictions on an August, 2003 assessment form. (Tr. 608-609). A cervical MRI Scan in March of 2001, obtained at the request of the physician, revealed bulging at C4-C5, C5-C6, and C6-C7 without evidence of nerve root entrapment or spinal stenosis. (Tr. 503). An October, 2001 MRI Scan of the cervical spine showed only a small to moderate disc protrusion at C5-C6. (Tr. 605). An MRI scan of the lumbar spine revealed a moderate disc protrusion and mild hypertrophic facets at L5-S1, a degenerative disc with slight narrowing and desiccation at T12-L1 and mild hypertrophic facets at L3-L4 and L4-L5. (Tr. 605). An MRI Scan of the thoracic spine showed no discrete findings. (Tr. 606). MRI Scans in March of 2003 of the cervical and lumbar spines revealed essentially the same findings as previously (Tr. 604). Dr. Gilbert himself had indicated that physical examination of the claimant's cervical spine was within normal limits. (Tr. 163). Dr. Best saw the October MRI Scans and did not impose any functional limitations, noting a probable full return to pre-injury status and full duty. (Tr. 513). Dr. Best reported that as of March, 2002, Campbell was said to perform all activities of daily living without difficulty. (Tr. 508). As previously noted, Dr. Kriss indicated that Campbell's physical and neurological examinations had been "totally normal" as of September, 2002. (Tr. 525). Dr. Cox did not find any motor deficits or evidence of nerve root compression upon

7

physical examination in 2003. (Tr. 614). Therefore, under these circumstances, the ALJ could properly reject as binding the opinion of Dr. Gilbert.

Dr. Chaney also identified extremely severe physical limitations in a January 22, 2004 medical report. (Tr. 633-635). Treatment records from the physician reveal that he treated the patient primarily for minor complaints of respiratory and urinary problems as well as knee pain.[1] (Tr. 203-296, 347-486, 557-603, 638-648). Dr. Chaney's 2002 and 2003 progress notes barely mention musculoskeletal problems. (Tr. 557-575, 640-647). Earlier, Dr. Chaney referred the plaintiff to Dr. Garnett Sweeney for treatment of her knee problems. The doctor performed a partial medial meniscectomy of the right knee in 2002. (Tr. 500-501). She returned for follow-up with Dr. Lisa Degnore, a colleague of Dr. Sweeney, who noted that she was stable post-operatively and could resume low-level activities. (Tr. 501). Less than one month later, the patient was said to be doing extremely well with minimal discomfort and was released from regular care. (Tr. 501). Neither orthopedic surgeon imposed any long-term functional restrictions. Dr. Cox did not note any knee problems in August of 2003. Therefore, under these circumstances, the ALJ could reject as binding Dr. Chaney's restrictions.

Dr. Paul Forberg, a consultant examiner, also identified more severe

---

[1] Dr. Chaney did not include any environmental restrictions on his assessment form. (Tr. 635). The physician did indicate in his treatment notes that Campbell should avoid exposure to noxious fumes and cigarette smoke. (Tr. 569). This factor was not presented in the hypothetical question. The claimant has not raised this omission as an issue. Furthermore, the record reveals that the plaintiff continued her cigarette smoking habit despite medical advice to quit. (Tr. 558). In Mullins v. Secretary of Health and Human Services, 836 F.2d 980 (6th Cir. 1987), the court found that in view of a claimant's continued smoking habit, "it was difficult to invision [sic] a severe and environmental restriction imposed by a pulmonary condition." Mullins, 836 F.2d at 985. Therefore, the ALJ did not err in omitting environmental restrictions from the hypothetical question.

8

physical restrictions than those presented in the hypothetical question. (Tr. 519). Dr. Forberg's opinion is offset by those of Dr. Cox, Dr. Best and Dr. Kriss. Therefore, the ALJ dealt properly with the evidence of record relating to Campbell's physical condition.

The ALJ also dealt properly with the evidence of record relating to Campbell's mental status. The hypothetical question was compatible with the opinion of psychologist William Rigby, an examining consultant, who opined that the plaintiff would have a "fair" ability to tolerate work stresses. (Tr. 183). The ALJ directly presented in the question the mental restrictions noted by Psychologist Suzann O'Koon, who testified at the administrative hearing as a medical advisor. (Tr. 703). Psychologists Lea Perritt (Tr. 185) and Edward Stodola (Tr. 300), the non-examining medical reviewers, each opined that the plaintiff's mental problems were not "severe." These reports provide substantial evidence to support the administrative decision.

More severe mental restrictions than those presented to the vocational expert were identified by Dr. Gilbert (Tr. 610) and Psychologist James Leisenring, a consultant examiner (Tr. 627-628). Leisenring's opinion was offset by that of the equally-placed Rigby. While Dr. Gilbert was a treating source, he is not a mental health specialist. The administrative regulations provide that "we generally give more weight to the opinion of a specialist about medical issues related to his or her area of speciality that to the opinion of a source who is not a specialist." 20 C.F.R. Section 404.1527(d)(5). Thus, the ALJ could properly rely upon Rigby and O'Koon, the mental health specialists, in preference to Dr. Gilbert.

Karen Sallee, a Licensed Clinical Social Worker, opined that Campbell was totally disabled. (Tr. 637). Under the federal regulations, Sallee is not an

9

"acceptable medical source" whose opinion would be binding on the ALJ. 20 C.F.R. Section 404.1513.

Campbell argues that the ALJ erred in failing to find that her mental problems met the requirements of Sections 12.04 and 12.06 of the Listing of Impairments. The plaintiff asserts that O'Koon indicates that these Listings are "present." However, the advisor clearly testified that no Listing section had been met or equaled. (Tr. 702-703). The claimant also cites the report of Leisenring as evidence which supports her claim of meeting a Listing and she cites the examiner's Global Assessment of Functioning (GAF) rating of 60 on a scale of 100. The undersigned notes that even if Leisenring's report supported her claim, his opinion is still offset by that of Rigby, which clearly does not indicate that a Listing was satisfied. Furthermore, a GAF of 60 suggests only the existence of "moderate" psychological symptoms according to the American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders (4th ED.-Revised, 1994) and would not appear to be consistent with a Listing. Therefore, the Court must reject the plaintiff's argument.

Campbell argues that the ALJ did not properly evaluate her subjective pain complaints. Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Campbell was found to be suffering from a potentially painful condition. However, even if she could be found to have

satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs. First, the medical evidence does not appear sufficient to confirm the severity of the alleged pain. Second, objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain. Therefore, the ALJ would appear to have properly evaluated Campbell's pain complaints.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the \_\_13\_\_ day of July, 2005.

G. WIX UNTHANK
SENIOR JUDGE

11